UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | 18-CR-327 (JPO) |
| -v- | 25-CV-3662 (JPO) |
| JESUS MIGUEL MATOS,<br>                    Defendant. | MEMORANDUM AND ORDER |

J. PAUL OETKEN, District Judge:

Presently before the Court is petitioner Jesus Miguel Matos's motion under 28 U.S.C.

§ 2255, to vacate, set aside, or correct his sentence.  (ECF No. 109.)[*]  Matos was convicted

following a three-day jury trial of conspiracy to commit Hobbs Act robbery in violation of 18

U.S.C. § 1951; attempted Hobbs Act robbery in violation of 18 U.S.C. §§ 1951 and 2; conspiracy

to distribute and possess with intent to distribute at least one kilogram of heroin in violation of

21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; and using and carrying a firearm during and in

relation to, and possessing a firearm in furtherance of, the attempted robbery and conspiracy to

distribute counts in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2.  *See United States v. Matos*,

No. 22-691, 2024 WL 1003292, at *1 (2d Cir. Mar. 8, 2024).  Proceeding *pro se*, Matos moves

to vacate his sentence on grounds of ineffective assistance of counsel, alleged trial error in the

admission of prior-crimes evidence and jury instructions regarding drug quantity, and the

unfairness of his sentence.

---

[*] All ECF numbers refer to the docket for case number 18-CR-327 unless otherwise
noted.

## I.    Background

The Court assumes familiarity with the factual background in this case.  However, a brief overview of the procedural history is provided below.

On May 4, 2018, Matos, along with two co-conspirators, was indicted for his role in a reverse-sting operation after the group conspired to rob a purported heroin shipment.  (ECF No. 10.)  Trial commenced on June 24, 2019.  Three days later, on June 27, 2019, the jury found Matos guilty as to all counts in the indictment.  (ECF No. 51.)  On March 29, 2022, this Court entered judgment of conviction and sentenced Matos to a term of 180 months' imprisonment, the mandatory statutory minimum, to be followed by five years' supervised release.  (ECF No. 98.)

On March 31, 2022, Matos, represented by counsel, filed a direct appeal of the judgment of conviction.  (ECF No. 99.)  After hearing oral argument, the Second Circuit rejected his claims and affirmed the judgment of conviction, rejecting his claims that (1) the District Court abused its discretion in admitting evidence of his prior crimes; and (2) the District Court's administered an incorrect jury instruction as to drug quantity.  *Matos*, 2024 WL 1003292.

On April 30, 2025, Matos filed his *pro se* § 2255 motion. (ECF No. 105.)  The defendant filed a corrected *pro se* § 2255 motion on June 26, 2025 (ECF No. 109), and a supplemental *pro se* § 2255 motion on July 9, 2025 (ECF No. 114).  Matos subsequently submitted an attorney-client privilege waiver.  (*See* ECF No. 119.)  The Court also ordered Matos's trial counsel, Anthony Ricco and Christine Delince, to provide sworn testimony, in the form of declarations, addressing Matos's allegations of ineffective assistance of counsel.  (*Id.*)  The government responded to the petition on October 30, 2025.  (ECF No. 128.)

## II.    Legal Standard

Under 28 U.S.C. § 2255, a federal prisoner may collaterally attack his sentence by "mov[ing] the court which imposed the sentence to vacate, set aside or correct the sentence."  28

U.S.C. § 2255(a).  In adjudicating such a motion, the district court must hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255(b)).  The filing of a § 2255 motion, however, does not automatically entitle the movant to a hearing; a hearing is not required where the allegations are "vague, conclusory, or palpably incredible."  *Id.* (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).  Whether a hearing is necessary lies within the district court's discretion.  *See Pham v. United States*, 317 F.3d 178, 184 (2d Cir. 2003).  And where, as here, the judge who presided over the criminal proceedings also considers the § 2255 motion, "a full-blown evidentiary hearing may not be necessary."  *Raysor v. United States*, 647 F.3d 491, 494 (2d Cir. 2011).

Collateral review is constrained by "society's strong interest in the finality of criminal convictions," and accordingly, a defendant faces a higher bar "to upset a conviction on a collateral, as opposed to direct, attack."  *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010).  To prevail on a § 2255 motion, a petitioner must therefore demonstrate either a constitutional violation or an error of law or fact that "constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  *Nnebe v. United States*, 534 F.3d 87, 90 (2d Cir. 2008) (quotation marks omitted).  The petitioner must set forth "specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief."  *Gonzalez*, 722 F.3d at 131.  In assessing such allegations, the Court "need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding."  *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009).

3

A § 2255 motion is also not a substitute for a direct appeal.  *United States v. Polanco*, No. 16-CR-826, 2025 WL 562590, at *2 (S.D.N.Y. Feb. 20, 2025); *Gupta v. United States*, 913 F.3d 81, 84 (2d Cir. 2019).  Under the mandate rule, issues already decided on direct appeal may not be relitigated on collateral review.  *Yick Man Mui*, 614 F.3d at 53; *see also Shapiro v. United States*, No. 06-CR-357, 2018 WL 9801182, at *3 (S.D.N.Y. Aug. 7, 2018), *aff'd*, 828 F. App'x 82 (2d Cir. 2020); *Kergil v. United States*, No. 12-CR-152, 2019 WL 3940621, at *2 (S.D.N.Y. Aug. 1, 2019).  Moreover, claims not raised on direct appeal are procedurally barred unless the petitioner can establish both cause for the default and actual prejudice, or demonstrate actual innocence.  *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011).

Because Matos proceeds *pro se*, his submissions are held to "less stringent standards than [those] drafted by lawyers." *Santiago v. United States*, 187 F. Supp. 3d 387, 388 (S.D.N.Y. 2016) (quoting *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir.1993)).  The Court therefore construes his papers liberally and interprets them "to raise the strongest arguments they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (quotation marks omitted).  Nonetheless, *pro se* litigants remain subject to the "relevant rules of procedural and substantive law." *Carrasco v. United States*, 190 F. Supp. 3d 351, 352 (S.D.N.Y. 2016) (quotation marks omitted).

## III.    Discussion

### A.    Prejudicial Evidence

At trial, the Court admitted testimony from co-conspirator Braulio Valette concerning Matos's prior crimes.  The Court determined that evidence showing Matos and his co-conspirators had previously committed crimes together, including an attempted robbery, demonstrated the mutual "trust" that led the others to invite Matos to participate in the planned robbery charged in the indictment.  (ECF No. 52 at 34.)  The testimony also rebutted one of Matos's defenses—that he did not knowingly and intentionally join the conspiracy.  (*Id.*)

4

Evidence of other crimes is admissible under Federal Rule of Evidence 404(b) when offered for a permissible purpose, such as proving a defendant's intent or knowledge. Fed. R. Evid. 404(b)(2). Additionally, where a conspiracy is charged, uncharged acts may be admissible as direct evidence of the conspiracy itself. *United States v. Baez*, 349 F.3d 90, 93 (2d Cir. 2003). Evidence of an uncharged act is admissible if it: (1) arose out of the same transaction or series of transactions as the charged offense, (2) is inextricably intertwined with the evidence of the charged offense, or (3) is necessary to complete the story of the crime on trial. *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000). Whether treated as Rule 404(b) evidence or direct evidence, such evidence may be admitted to inform the jury of the background of the charged conspiracy, complete the story of the crimes charged, and explain how the illegal relationship among the participants developed. *United States v. Williams*, 205 F.3d 23, 33-34 (2d Cir. 2000).

When considering evidence offered under Rule 404(b), a court must weigh its probative value against the danger of unfair prejudice pursuant to Rule 403. *Huddleston v. United States*, 485 U.S. 681, 691 (1988); *United States v. Downing*, 297 F.3d 52, 58 (2d Cir. 2002); *United States v. Figueroa*, 618 F.2d 934, 942 (2d Cir. 1980); *United States v. Williams*, 577 F.2d 188, 191 (2d Cir. 1978).

In his petition, Matos argues that the government violated Rules 403 and 404 by introducing evidence of firearms and violence purportedly unrelated to him, asserting that these "other act" allegations were prejudicial and confused the jury. (ECF No. 114 at 1.) This argument is foreclosed by the Second Circuit's decision on direct appeal, which found no abuse of discretion in this Court's admission of the challenged evidence. *See Matos*, 2024 WL 1003292, at *2 (holding that Valette's testimony regarding Matos's prior crimes constituted direct evidence of the charged conspiracy). The Court of Appeals further held that the evidence

was not unduly prejudicial under Rule 403.  *Id.*  Even if this Court disagreed—which it does not—it is bound by that ruling.  *See United States v. Becker*, 502 F.3d 122, 127 (2d Cir. 2007) (holding that a section 2255 petitioner may not "relitigate questions which were raised and considered on direct appeal" (quotation marks omitted)).

In any event, the testimony regarding other crimes was properly admitted as direct evidence because it demonstrated the mutual trust that prompted the conspirators to invite Matos to join the planned robbery.  *Matos*, 2024 WL 1003292, at \*2.  The evidence was also admissible under Rule 404(b) because it rebutted Matos's defense that he did not knowingly and intentionally join the conspiracy, showing that he was neither inexperienced nor unwilling and directly undercutting an argument he placed at issue.  *Id.*  Although Matos contends that the crimes described in Valette's testimony were not tied to him, Valette testified that he committed those crimes with Matos.  Assessing the credibility of that testimony was the jury's exclusive function, not a matter for resolution on post-trial review.  *United States v. Strauss*, 999 F.2d 692, 696 (2d Cir. 1993).

### B.  Jury Instructions

Matos contends that the jury instruction on drug quantity was erroneous because it allowed the jury to determine drug weight without regard to foreseeability or Matos's actual knowledge.  (ECF No. 114 at 1.)  The Second Circuit squarely rejected this argument on direct appeal, and this Court is bound to do the same.  As the Court of Appeals explained, this Court's instruction "mirror[ed]—to a tee—[Second Circuit] precedent holding that 'the government need not prove *scienter* as to drug *type* or *quantity* when a defendant personally and directly participates in a drug transaction underlying a conspiracy charge.'"  *Matos*, 2024 WL 1003292, at \*3 (quoting *United States v. Andino*, 627 F.3d 41, 47 (2d Cir. 2010)).

Matos's reliance on Eleventh Circuit authority is therefore unavailing.  (*See* ECF No. 114 at 1 (citing *United States v. Martinez*, 987 F.3d 867 (11th Cir. 2021)).)  That precedent does not bind this Court, which is required to follow controlling Second Circuit law unless and until it is overruled.  *United States v. Kelly*, 609 F. Supp. 3d 85, 131 (E.D.N.Y. 2022).

### C.    Unfair Sentencing and Trial Penalty

Matos asserts that he received an unfair sentence because it was disproportionate when compared to the sentences of his codefendants, included a "[t]rial [p]enalty," and reflected a total drug quantity that Matos was unaware of when he committed the crime.  (ECF No. 114 at 1.)

First, that Matos's co-conspirators received lower sentences does not render his sentence substantively unreasonable.  *See United States v. Wills*, 476 F.3d 103, 110 (2d Cir. 2007), *abrogated on other grounds by United States v. Cavera*, 550 F.3d 180 (2d Cir. 2008) (Section 3553(a) "does not *require* district courts to consider sentencing disparity among co-defendants," although disparities may be considered) (emphasis added)).

Turning to his trial-penalty argument, Matos is correct that the federal criminal justice system permits prosecutors to charge the most serious offenses supported by the evidence while simultaneously offering plea agreements to lesser charges—thereby reducing the risk of a substantially higher penalty if a defendant is convicted at trial.  *See, e.g.*, *United States v. Tavberidze*, 769 F. Supp. 3d 264, 267 (S.D.N.Y. 2025).  And to be sure, "more severe punishment clearly may have a discouraging effect on [a] defendant's assertion of his trial rights."  *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (quotation marks omitted).  But the Supreme Court has squarely held that such discouragement is both "inevitable" and "permissible" in a criminal legal system that allows plea bargaining.  *Id.* (internal quotation marks omitted).  More specifically, it is well established in this Circuit and others that a defendant is not subjected to an impermissible trial penalty merely because he did not receive the

benefits of a plea bargain that he chose to reject. *See United States v. Fernandez*, 104 F.4th 420, 428 (2d Cir. 2024) ("[O]ur system of pleas . . . often results in individuals who accept a plea bargain receiving shorter sentences than other individuals who are less morally culpable but take a chance and go to trial." (internal quotation marks omitted)); *see also United States v. Yeje-Cabrera*, 430 F.3d 1, 26-27 (1st Cir. 2005) ("A defendant simply has no right to a sentence, after trial, that is as lenient as a sentence he could have had earlier in a plea bargain.").

Finally, Matos's argument that this Court improperly adopted the drug quantities in its sentencing determination is unavailing. The jury—not the Court—was tasked with determining guilt on Count Three, the narcotics conspiracy count, and with finding the quantity of heroin that it concluded Matos conspired to distribute or to possess with intent to distribute. (*See* ECF No. 51.) Once the jury establishes both guilt and the statutorily specified drug quantity, the district court is constrained by the applicable statutory minimum and maximum penalties and lacks authority to impose a sentence below the mandatory minimum. *See United States v. Pena*, 297 Fed. Appx. 76, 78-80 (2d Cir. 2008) (summary order); *United States v. Sharpley*, 399 F.3d 123, 127 (2d Cir. 2005) ("[T]he Guidelines [are] advisory in nature, leaving sentences to the district court's discretion, guided by the Guidelines and the other factors of § 3553(a), *and bounded by any applicable statutory minimum and maximum*." (emphasis added)).

### D.    Ineffective Assistance of Counsel

Matos contends that counsel rendered ineffective assistance in his criminal case in three ways: (1) by failing to properly advise Matos regarding plea options and "fail[ing] to explain the risks of going to trial or the likely sentencing outcome if convicted"; (2) by "fail[ing] to object to" other act evidence during trial; and (3) by failing to object to purported errors at sentencing. (ECF No. 109 at 2; ECF No. 114 at 1.) Because these claims are raised for the first time in this

petition, the Court is not precluded by the mandate rule and considers the merits of each argument.

To succeed on an ineffective assistance of counsel claim, a petitioner must satisfy the Supreme Court's two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). "Under *Strickland*, in order to prevail on an ineffective-assistance-of-counsel claim, a defendant must meet a two-pronged test: (1) he 'must show that counsel's performance was deficient,' so deficient that, 'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance,' and (2) he must show 'that the deficient performance prejudiced the defense,' in the sense that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Rone v. United States*, No. 15-CV-1417, 2019 WL 5445710, at *5 (S.D.N.Y. Oct. 24, 2019) (quoting *Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011) (quoting *Strickland*, 466 U.S. at 687, 690)).

"In applying *Strickland* to a plea offer, 'as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused.' An objectively reasonable attorney must 'promptly communicate' and explain any plea offer." *Weston v. United States*, No. 11-CV-2151, 2014 WL 4370034, at *2 (S.D.N.Y. Sept. 2, 2014) (quoting *Missouri v. Frye*, 566 U.S. 134, 132 (2012)). Where trial counsel's deficient performance causes a petitioner to reject a plea offer and proceed to a trial that resulted in conviction, to satisfy the *Strickland* prejudice prong, the petitioner "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court . . . , that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe

than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

In this case, Matos points out that he was offered two plea deals by the government: one with a five-year mandatory minimum, and another with a ten-year mandatory minimum. (ECF No. 114 at 1.) According to Matos, he rejected both based on advice from his attorney, "who failed to explain the risks of going to trial or the likely sentencing outcomes if convicted." (*Id.*) Matos asserts that, had he received the proper legal advice, he would have accepted the plea deal. (*Id.*)

The record does not support Matos's claim of ineffective assistance. First, counsel have provided sworn testimony to the Court that Matos was made aware of the plea offers from the government. (ECF No. 127 ("Ricco Decl.") at 4-7, 10-12.) This Court confirmed on the record before trial that those plea offers had been communicated to Matos. (ECF No. 63 at 10-12.) Moreover, counsel, along with Matos's prior counsel and this Court, all explained to Matos that if he were to lose at trial, he would face a fifteen-year mandatory minimum. (*Id*. at 8-9.) For example, in March 2019, counsel advised Matos that the government had rejected Matos's counteroffer to the government's plea offer and stated:

> [I]f you proceed to trial and are convicted on Count Three of the indictment, you will face a mandatory minimum sentence of 10 years imprisonment on Count Three alone. And, if you are also convicted on Count Four (the firearms count) in violation of 18 U.S.C. Section 924(c), you would be required to serve a mandatory consecutive term of 5 years on Count Four, resulting in a mandatory minimum term of 15 years imprisonment, before the court even considers any other count(s) of conviction.

(*Id*. at 12 (quoting *Letter from Defense Counsel to Jesus Miguel Matos*, dated March 25, 2019).) Then, on May 15, 2019, over a month before trial, the Court confirmed that Matos understood that "there would be a [fifteen] year mandatory minimum if [he] were

10

found guilty on all four [] counts." (ECF No. 39 at 13-14.)  In addition, during that May 15 conference, the Court engaged in a lengthy colloquy with Mr. Matos to explain the risks of a trial conviction requiring a fifteen-year sentence in light of the applicable law (*id*. at 10-17); and following the Court's comments at that conference, the government re-offered the plea with a ten-year minimum, which Matos again declined to accept. (ECF No. 43 at 10-12; Ricco Decl at 6.)

The evidence clearly demonstrates that counsel fulfilled their duties with respect to plea negotiations in this case.  They communicated the terms of all plea offers made by the government, explained the risks of proceeding to trial, and provided excellent representation throughout the case.  *See Frye*, 566 U.S. at 145.

Matos also states that counsel erred by failing to object to the introduction of the allegedly prejudicial evidence presented in Valette's testimony.  This claim too is belied by the record.  Counsel did, in fact, litigate the admissibility of Valette's testimony at great length in their motions in limine and in oral arguments before the Court.  (*See* ECF No. 46 at 3-6; Ricco Decl. at 14-15.)

Finally, because there were no errors in sentencing, Matos cannot ascribe his sentence to ineffective assistance of counsel.  *See Arango v. United States*, No. 95-2394, 1995 WL 732725, at *4 (2d Cir. 1995) (unpublished opinion).

Ultimately, this Court cannot conclude that counsel's performance at trial was constitutionally deficient.  *Strickland*, 466 U.S. at 687-88, 691.

### E.     Request for Evidentiary Hearing

As noted, an evidentiary hearing is not necessary when "the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  It is appropriate to render a decision without a testimonial hearing "where (1) the allegations of the

motion, accepted as true, would not entitle the petitioner to relief[,] or (2) the documentary record, including any supplementary submissions such as affidavits, render a testimonial hearing unnecessary." *Rosa v. United States*, 170 F. Supp. 2d 388, 398 (S.D.N.Y. 2001) (citing *Chang v. United States*, 250 F.3d 79, 85-86 (2d Cir. 2001)). As already explained, the record demonstrates that Matos received effective assistance at every stage of the proceeding, that the evidence of his prior crimes was not prejudicial, that the jury instructions were complete, and that his sentencing was not unlawful. Matos has neither made allegations that would entitle him to relief nor articulated any facts warranting development at a hearing. Therefore, the Court concludes that there is no need for a hearing.

## IV.    Conclusion

For the foregoing reasons, Matos's motion under 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence is denied.

The Clerk of Court is directed to:

(1) close the motions at Docket Number 105, 109, 116, and 118 in case number 18-CR-327;

(2) enter judgment of dismissal in case number 25-CV-3662 and close that case; and

(3) mail a copy of this Memorandum and Order to Mr. Matos at the address below.

SO ORDERED.

Dated:  March 13, 2026
        New York, New York

_____
                    J. PAUL OETKEN
                    United States District Judge

Copy to be mailed to:

Jesus Miguel Matos
c/o Taisha Rodriguez
1407 Lanier Point Place
Kissimmee, FL 34746

12